United States District Court
Southern District of Texas
**ENTERED**
November 10, 2021
Nathan Ochsner, Clerk

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| R&J ENTERTAINMENT LLC | § | |
| D/B/A/ TRAPPED ESCAPE ROOM, | § | |
| ET. AL., | § | |
| | § | |
| Plaintiffs. | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:20-cv-03782 |
| | § | |
| HOUSTON CASUALTY COMPANY, | § | |
| | § | |
| Defendant. | § | |

### MEMORANDUM AND RECOMMENDATION

In this case, Plaintiffs R&J Entertainment LLC and TRAPPED! LLC, on behalf of themselves and all others similarly situated (collectively "R&J"), are demanding insurance coverage from Defendant Houston Casualty Company ("HCC") for the shutdown of their businesses due to the COVID-19 pandemic. HCC has filed a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). *See* Dkt. 97. R&J and HCC have each submitted multiple notices of supplemental authority. Having reviewed the briefing, the record, the applicable law, and having heard oral argument, I recommend that the Motion to Dismiss be **GRANTED**.

### BACKGROUND

R&J operates escape room businesses in Upland, California; San Dimas, California; and Las Vegas, Nevada. Over the past year and a half, the COVID-19 pandemic has significantly impacted R&J's operations. To prevent the spread of the virus, state governments ordered the widespread shutdown of businesses across the country. Relevant here, on March 19, 2020, California Governor Gavin Newsom issued Executive Order N-33-20, ordering all non-essential government workers to remain in their homes to prevent the spread of the virus. A few weeks later, on March 31, 2020, Nevada Governor Steve Sisolak issued the Emergency Directive 010 Stay at Home Order, which had the same effect as the California

Executive Order.[1] These orders effectively prevented R&J from operating escape rooms, causing financial losses.

R&J holds an all-risk insurance policy with HCC (the "Policy"). Specifically, HCC issued a Master Policy to the Association for Room Escapes of North America ("ARENA"), under which the Policy was issued for the period 11/01/2019 to 11/01/2020. R&J obtained the Policy through its membership with ARENA.

After suffering financial losses as a result of the COVID-19 pandemic, R&J sought coverage under the Policy's business income, extra expense, and civil authority coverage provisions. However, according to R&J, HCC "has systematically denied and continues to deny and refuses to provide payment for insurance claims for coverage for similar losses and expenses by insureds holding policies" that are substantially similar, if not identical, to the Policy. Dkt. 95 at 2.

Consequently, in August 2020, R&J filed a purported class action case against HCC in the Northern District of California, demanding coverage under the Policy for losses suffered because of COVID-19 related closures. A short time later, upon joint stipulation of the parties, the case was transferred to this Court. Since then, R&J has filed a First Amended Complaint, seeking a declaratory judgment regarding HCC's alleged violation of the Policy's business income, civil authority, and extra expense coverage provisions.

## APPLICABLE LAW

### A.   MOTION TO DISMISS UNDER RULE 12(B)(6)

Rule 12(b)(6) allows for the dismissal of a complaint for the "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). To survive a motion to dismiss under Rule 12(b)(6), a plaintiff's complaint must plead "enough

---

[1] On March 19, 2020, the Mayor of Los Angeles, Eric Garcetti, issued a similar stay-at-home order, stating: "Order is given because, among other reasons, the COVID-19 virus can spread easily from person to person and it is physically causing property loss or damage due to its tendency to attach to surfaces for prolonged periods of time." Dkt. 97-4 at 2.

facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In deciding a Rule 12(b)(6) motion, I must "accept all well-pleaded facts as true, drawing all reasonable inferences in the nonmoving party's favor." *Benfield v. Magee*, 945 F.3d 333, 336 (5th Cir. 2019). I "do not, however, accept as true legal conclusions, conclusory statements, or naked assertions devoid of further factual enhancement." *Id.* at 336–37 (cleaned up). Because a complaint must be liberally construed in favor of the plaintiff, a motion to dismiss under Rule 12(b)(6) is generally viewed with disfavor and is rarely granted. *See Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009).

## B.    TEXAS INSURANCE LAW

The parties agree that Texas law governs this action. Under Texas law, insurance policies are read based on "common principles governing the construction of contracts, and the interpretation of an insurance policy is a question of law for a court to determine." *Am. Int'l Specialty Lines Ins. Co. v. Rentech Steel LLC*, 620 F.3d 558, 562 (5th Cir. 2010). "Unless the policy dictates otherwise, courts give words and phrases their ordinary and generally accepted meaning, reading them in context and in light of the rules of grammar and common usage." *Nassar v. Liberty Mut. Fire Ins. Co.*, 508 S.W.3d 254, 258 (Tex. 2017) (cleaned up). Courts "enforce unambiguous policies as written." *Pan Am Equities, Inc. v. Lexington Ins. Co.*, 959 F.3d 671, 674 (5th Cir. 2020). "If policy language is worded so that it can be given a definite or certain legal meaning, it is not ambiguous and [courts] construe it as a matter of law." *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157 (Tex. 2003). *See also Pan Am*, 959 F.3d at 674 ("If an insurance contract, just like any other contract, uses unambiguous language, that's that.").

If a policy is ambiguous, a court must resolve the uncertainty by adopting the construction that most favors the insured. *John M. O'Quinn, P.C. v. Lexington Ins. Co.*, 906 F.3d 363, 367 (5th Cir. 2018). "The insured bears the initial burden of showing that there is coverage, while the insurer bears the burden of proving the applicability of any exclusions in the policy." *Id.* (quoting *Guar. Nat'l Ins. Co. v. Vic Mfg. Co.*, 143 F.3d 192, 193 (5th Cir. 1998)).

## ANALYSIS

R&J seeks to recover under the Policy's business income, civil authority, and extra expense coverage provisions. The business income coverage provision allows recovery only if the insured alleges facts that plausibly show that the suspension in business operations was "caused by direct physical loss of or damage to property at [the] premises." Dkt. 41-1 at 34. The civil authority coverage provision allows recovery only if the insured alleges facts that plausibly show that a government order prohibited "access to the described premises due to direct physical loss of or damage to property, other than at the described premises." *Id.* at 35. Similarly, the extra expense coverage provision allows recovery only if the insured incurred expenses due to "direct physical loss or damage to property."[2] *Id.* at 34.

HCC maintains that there is no insurance coverage. The crux of HCC's argument is that R&J's losses were not caused by events or occurrences which

---

[2] Each provision also specifies that a loss or damage must be caused by or result from a "Covered Cause of Loss." *See* Dkt. 41-1 at 34–35 (Business Income: "The loss or damage must be caused by or result from a Covered Cause of Loss."; Extra Expense: "Extra Expense means necessary expenses you incur . . . that you would not have incurred if there had been no direct physical loss or damage to property caused by or resulting from a Covered Cause of Loss."; Civil Authority: "We will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises due to direct physical loss of or damage to property, other than at the described premises, caused by or resulting from any Covered Cause of Loss."). Covered Cause of Loss in turn means "[r]isks of direct physical loss unless the loss is" either excluded or limited by certain specified provisions. *Id.* at 44 (emphasis omitted). Because a Covered Cause of Loss is also generally a direct physical loss, my discussion below is equally applicable to the Covered Cause of Loss language. This amounts to an emphasis that direct physical loss is a requirement.

4

constituted "direct physical loss of or damage to the property" under the Policy. R&J takes the opposite position that losses caused by the government closure orders constitute direct physical loss as defined by the Policy. Thus, the definition of "direct physical loss of or damage to property" is central to this dispute. I will address this definitional issue first. Then I will apply the definition to each provision.

## A.   "DIRECT PHYSICAL LOSS OF OR DAMAGE TO PROPERTY"

The term "direct physical loss of or damage to property" is not defined by the Policy. As described above, when a policy term is undefined, a court typically must apply the term's ordinary and generally accepted meaning. *See Nassar*, 508 S.W.3d at 258. Sometimes, however, a court is tasked with applying a technical definition. *See Anadarko Petroleum Corp. v. Houston Cas. Co.*, 573 S.W.3d 187, 193 (Tex. 2019) ("We must give an insurance policy's undefined words their common, ordinary meaning *unless the policy itself* demonstrates that the parties intended a different or more technical meaning." (cleaned up and emphasis added)).

Here, HCC argues that I should apply the plain and ordinary meaning, as has been previously applied in numerous Texas federal courts. R&J counters this argument in two ways. First, R&J argues that the plain ordinary meaning of "direct physical loss of or damage to property" covers its property because it

> was changed by an "external event" from an "initial satisfactory state"—in which the air was safe to breathe, surfaces were safe to touch, and ordinary business could be conducted on premises—"into an unsatisfactory state"—in which fatal particles permeated the air and covered surfaces, causing civil authorities to conclude that premises were so unsafe that ordinary business could not be conducted.

Dkt. 100 at 6–7. Next, R&J argues that I should apply a technical definition because the Insurance Services Offices, Inc. ("ISO")—the entity which created the

forms used by HCC to draft its insurance policies—seemingly understood the term to include the type of non-physical damages typically caused by viruses.

I begin by rejecting the use of any technical definition. Although R&J has included a significant amount of information concerning the ISO in its live pleading, the simple fact remains that the Policy does not internally reference the ISO or the existence of any supposedly applicable technical definition. In other words, the policy itself does not demonstrate that R&J and HCC intended a different or more technical meaning for the term "direct physical loss of or damage to property." *See Anadarko*, 573 S.W.3d at 193. Consequently, I "must give [the Policy's] undefined words their common, ordinary meaning." *Id.*

The common and ordinary meaning of "direct physical loss of or damage to property" is not open to debate. "While the policy does not define 'direct physical loss of or damage to property,' the Fifth Circuit has held that pleading 'direct physical loss or damage' to property requires allegations of 'distinct, demonstrable physical alteration of the property.'" *DZ Jewelry, LLC v. Certain Underwriters at Lloyds London*, 525 F. Supp. 3d 793, 798 (S.D. Tex. 2021) (quoting *Hartford Ins. Co. Midwest v. Miss. Valley Gas Co.*, 181 F. App'x 465, 470 (5th Cir. 2006) (collecting authorities)).

> The requirement that the loss be "physical," given the ordinary definition of that term is widely held to exclude alleged losses that are intangible or incorporeal, and, thereby, to preclude any claim against the property insurer when the insured merely suffers a detrimental economic impact unaccompanied by a distinct, demonstrable, physical alteration of the property.

*Hartford*, 181 F. App'x at 470 (quoting 10A COUCH ON INS. § 148:46 (3d ed. 2005)).

"Courts in Texas and across the country, analyzing almost identical policy language, have held that allegations or proof of the presence of COVID-19, the effect of civil orders, and the voluntary reduction of capacity or use of other protective measures in response to the pandemic are all insufficient to establish

'direct physical loss or damage' to property."[4] *Univ. of Saint Thomas v. Am. Home Assurance Co.*, No. CV H-20-2809, 2021 WL 3129330, at *5 (S.D. Tex. July 23, 2021). *See also Ferrer & Poirot GP v. Cincinnati Ins. Co.*, No. 3:20-CV-3286-L-BK, 2021 WL 4260391, at *3–4 (N.D. Tex. Sept. 1, 2021)*; Mt. Hawley Ins. Co. v. Jamal & Kamal, Inc.*, No. CV H-20 2385, 2021 WL 3079715, at *3–4 (S.D. Tex. July 21, 2021); *Vandelay Hosp. Grp. LP v. Cincinnati Ins. Co.*, No. 3:20-CV-1348-D, 2021 WL 2936066, at *5 (N.D. Tex. July 13, 2021); *LDWB #2 LLC*, 2021 WL 2744568, at *5–6; *Uncle Nicky's LLC v. Blackboard Ins. Co.*, No. 1:21-CV-30-RP, 2021 WL 2980587, at *4–5 (W.D. Tex. June 30, 2021); *Kennard L., P.C. v. Nat'l Fire Ins. Co.*, No. 4:20-CV-2534, 2021 WL 2722793, at *2–3 (S.D. Tex. June 11, 2021); *ILIOS Prod. Design, LLC v. Cincinnati Ins. Co., Inc.*, No. 1:20-CV-857-LY, 2021 WL 1381148, at *4–8 (W.D. Tex. Apr. 12, 2021); *Selery Fulfillment, Inc. v. Colony Ins. Co.*, 525 F. Supp. 3d 771, 777–80 (E.D. Tex. 2021); *DZ Jewelry*, 525 F. Supp. 3d at 798–801; *Terry Black's Barbecue, LLC v. State Auto. Mut. Ins. Co.*, 514 F. Supp. 3d 896, 903–08 (W.D. Tex. 2021); *Steiner Steakhouse, LLC v. Amco Ins. Co.*, No. 1:20-CV-858-LY, 2020 WL 8879041, at *3–4 (W.D. Tex. Dec. 30, 2020); *Hajer v. Ohio Sec. Ins. Co.*, 505 F. Supp. 3d 646, 650–51 (E.D. Tex. 2020); *Diesel Barbershop*, 479 F. Supp. 3d at 359–60.

In my view, nothing in R&J's live pleading nor the Policy necessitates a result different from the horde of Texas federal courts that have already considered this issue. The term "direct physical loss of or damage to property" as used in the Policy

---

[4] R&J also argues that there is sufficient case law beyond the Fifth Circuit supporting its position that losses resulting from the government-ordered closure of a business constitutes direct physical loss under an insurance policy. While there is some authority supporting R&J's position, "[t]he great majority of courts outside the Fifth Circuit also have held that COVID-19 and related civil authority shutdown orders do not constitute a direct physical loss of property under similar insurance policies." *LDWB #2 LLC v. FCCI Ins. Co.*, No. 1:20-CV-425-LY, 2021 WL 2744568, at *5 n.2 (W.D. Tex. July 1, 2021) (collecting cases). In my view, the legion of cases "requiring tangible injury to property are more persuasive." *Diesel Barbershop, LLC v. State Farm Lloyds*, 479 F. Supp. 3d 353, 360 (W.D. Tex. Aug. 13, 2020).

is not ambiguous because courts throughout Texas have given it a "definite" and "certain" legal meaning. That meaning requires that covered property be physically lost or damaged before coverage can exist. R&J has failed to plead facts adequate to meet this standard.

**B.    CONTRACTUAL PROVISIONS AT ISSUE**

### 1.    Business Income and Extra Expense Coverage

To recover under the business income and extra expense coverage provisions, R&J must allege that its business operations were suspended and it incurred expenses due to "direct physical loss of or damage to [its] property." *See* Dkt. 41-1 at 34–35. As explained above, R&J has not alleged that its property has been physically lost or damaged, as required under Texas law. Thus, R&J has not stated a valid claim for business income or extra expense coverage.

### 2.    Civil Authority Coverage

The Policy provides, in relevant part:

> **Civil Authority:**
> We will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises due to *direct physical loss of or damage to property, other than at the described premises, caused by or resulting from any Covered Cause of Loss.*

Dkt. 41-1 at 35 (emphasis added). As explained by the *DZ Jewelry* court, "[a] government order must cause a loss of business income in two ways to trigger coverage. First, the order must prohibit access to the insured premises. Second, the order prohibiting access must be 'due to direct physical loss of or damage to property, other than at the described premises.'" 525 F. Supp. 3d at 801.

R&J argues that it has met the policy requirements for coverage under the civil authority coverage provision because:

> The Complaint satisfies these elements by alleging (1) that civil authorities prohibited access to the properties by ordering individuals to stay at home, preventing access to them by workers and customers and precluding their commercial use[;] and (2) that the Closure

Orders were issued in response to the *presence* of COVID-19 on both Plaintiffs' premises and those of nearby properties.

Dkt. 100 at 27.

Right out of the gate, it is arguable whether the closure orders prohibited access to the insured premises. *See, e.g., Mt. Hawley Ins. Co.*, 2021 WL 3079715, at *4 ("Courts interpreting Civil Authority provisions consistently hold that to 'prohibit' access means to 'formally forbid' or 'prevent' access, and not merely to diminish or reduce business.") (collecting cases). But "even if the government orders alleged in the complaint could be construed as prohibiting Plaintiffs from accessing their premises, the orders were not issued due to direct physical loss of or damage to property *other than at* [R&J's] *premises*." *Pappy's Barber Shops, Inc. v. Farmers Grp., Inc.*, 487 F. Supp. 3d 937, 945 (S.D. Cal. 2020).

"Because the orders were preventative—and absent allegations of [physical] damage to adjacent property—the complaint does not establish the requisite causal link between prior property damage and the government's closure order." *Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*, 487 F. Supp. 3d 834, 844 (N.D. Cal. 2020). And, "[a]bsent a direct causal link between a civil order 'prohibiting access' and some kind of 'physical loss or damage,' there can be no Civil Authority coverage." *Mt. Hawley Ins. Co.*, 2021 WL 3079715, at *4. *See also S. Tex. Med. Clinics. P.A. v. CNA Fin. Corp.*, No. H-06-4041, 2008 WL 450012, at *9 (S.D. Tex. Feb. 15, 2008) (holding that Civil Authority coverage requires a "causal relationship between the civil authority order and the damage to other property").

Because R&J fails to plead such a causal relationship, it has not adequately alleged coverage under the civil authority provision.

## CONCLUSION

For the foregoing reasons, HCC's Motion to Dismiss (Dkt. 97) should be **GRANTED**, and this case dismissed.

The Clerk shall provide copies of this Memorandum and Recommendation to the respective parties who have fourteen days from receipt to file written

objections under Federal Rule of Civil Procedure 72(b) and General Order 2002–13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

SIGNED this 10th day of November 2021.

ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE